IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| NEVRO CORP., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 21-258 (CFC) |
| | ) | |
| BOSTON SCIENTIFIC CORP. and | ) | |
| BOSTON SCIENTIFIC | ) | |
| NEUROMODULATION CORP., | ) | |
| | ) | |
| Defendants. | ) | |

**NEVRO CORP.'S OPENING BRIEF IN SUPPORT OF ITS MOTION
TO STRIKE BSC'S INEQUITABLE CONDUCT AND
UNCLEAN HANDS AFFIRMATIVE DEFENSES**

OF COUNSEL:

Bradford J. Badke
Ching-Lee Fukuda
Sharon Lee
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
(212) 839-5300

Thomas A. Broughan III
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, DC 20005
(202) 736-8000

Nathan A. Greenblatt
SIDLEY AUSTIN LLP
1001 Page Mill Road
Building 1
Palo Alto, CA 94304
(650) 565-7000

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Rodger D. Smith II (#3778)
Michael J. Flynn (#5333)
Lucinda C. Cucuzzella (#3491)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
rsmith@morrisnichols.com
mflynn@morrisnichols.com
ccucuzzella@morrisnichols.com

*Attorneys for Plaintiff*

February 8, 2022

# **TABLE OF CONTENTS**

Page

I.    INTRODUCTION AND SUMMARY OF ARGUMENT.............................1

II.   NATURE AND STAGE OF PROCEEDINGS................................................3

III.  STATEMENT OF FACTS ..........................................................................3

     A.    This Lawsuit ........................................................................3

     B.    BSC's Affirmative Defenses .................................................3

IV.  LEGAL STANDARD FOR MOTION TO STRIKE .....................................5

V.   ARGUMENT...........................................................................................6

     A.    BSC's Inequitable Conduct Defense Should Be Stricken ...................6

          1.    BSC Fails to Allege Facts Sufficient to Show Materiality.........7

          2.    BSC Identifies No Facts to Support Its Allegation of Intent to Deceive....................................................................................10

     B.    BSC's Unclean Hands Defense Should Be Stricken .........................14

VI.  CONCLUSION.........................................................................................18

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Baxalta, Inc. v. Bayer Healthcare LLC*,
C.A. No. 17-1316-RGA-SRF, 2020 WL 5445375 (D. Del. July 13,
2020) ...................................................................................................18

*Bench Walk Lighting LLC v. Everlight Elecs. Co.*,
C.A. No. 20-49-RGA, 2020 WL 5128086 (D. Del. Aug. 31, 2020) ............15, 18

*Cephalon, Inc. v. Slayback Pharma Ltd. Liab. Co.*,
C.A. No. 17-1154-CFC, 2019 WL 3497105 (D. Del. Aug. 1, 2019).................15

*Easton Technical Prods., Inc. v. FeraDyne Outdoors*,
C.A. No. 18-1222-RGA, 2019 WL 1513463 (D. Del. Apr. 8, 2019).........8, 9, 12

*Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*,
No. 2:15-CV-1202-WCB, 2017 WL 275465 (E.D. Tex. Jan. 20,
2017) ...................................................................................................15

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
575 F.3d 1312 (Fed. Cir. 2009) .................................................*passim*

*Glenside West Corp. v. Exxon Co.*,
761 F. Supp. 1100 (D.N.J. 1991)...............................................................6

*Greatbatch Ltd. v. AVX Corp.*,
C.A. No. 13-723-LPS, 2015 WL 9171042 (D. Del. Sept. 11, 2015) ................13

*Highmark, Inc. v. UPMC Health Plan, Inc.*,
276 F.3d 160 (3d Cir. 2001) ......................................................*passim*

*Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp.*,
398 F. Supp. 2d 305 (D. Del. 2005)......................................................14, 15

*Human Genome Sciences, Inc. v. Genentech, Inc.*,
2011 WL 7461786 (C.D. Cal. 2011) ....................................................12, 13, 18

*In re Gabapentin Patent Litigation*,
648 F. Supp. 2d 641 (D.N.J. 2009) .............................................................6

*In re Omeprazole Patent Litig.*,
    483 F.3d 1364 (Fed. Cir. 2007) ...........................................................................15

*Keystone Driller Co. v. General Excavator Co.*,
    290 U.S. 240 (1933)...........................................................................................14

*Magnesystems, Inc. v. Nikken, Inc.*,
    933 F. Supp. 944 (C.D. Cal. 1996) .......................................................16, 17, 18

*McInerney v. Moyer Lumber & Hardware, Inc.*,
    244 F. Supp. 2d 393 (E.D. Pa. 2002)..........................................................6, 14

*Sanofi-Synthelabo v. Apotex, Inc.*,
    470 F.3d 1368 (Fed. Cir. 2006) ..........................................................15, 16, 17

*Scherer Design Grp, LLC v. Ahead Eng'g LLC*,
    764 F. App'x 147 (3d Cir. 2019) ........................................................15, 16, 17

*Therasense, Inc. v. Becton, Dickinson & Co.*,
    649 F.3d 1276 (Fed. Cir. 2011) .................................................................10, 14

**Rules and Statutes**

35 U.S.C. § 101 ...........................................................................................................3

Fed. R. Civ. P. 9(b) ..........................................................................................*passim*

Fed. R. Civ. P. 12(f)..............................................................................................1, 5

## I.   INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff Nevro moves under Federal Rule of Civil Procedure 12(f) to strike two affirmative defenses—inequitable conduct and unclean hands—from Defendants' ("BSC") Answer (D.I. 27).  Both inequitable conduct and unclean hands defenses are fraud-based doctrines and are subject to heightened pleading obligations under Rule 9(b), which require the proponent to set forth specific facts to support the allegations.  Because BSC has failed to meet that requirement, those two affirmative defense should be struck from its Answer.

In this case, Nevro is asserting that BSC infringes five patents directed to providing patients with paresthesia-free spinal cord simulation ("SCS") therapy.  In its Answer, BSC raises inequitable conduct and unclean hands defenses, but fails to satisfy basic, well-established pleading requirements.  An inequitable conduct pleading must be pled with particularity and "include sufficient allegations of underlying facts" for the Court to reasonably infer that an individual "knew of the withheld material information" and "withheld or misrepresented this information with a specific intent to deceive the [Patent Office]."  *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1328-29 (Fed. Cir. 2009).  But BSC alleges no facts to support its allegation that James Thacker, a named inventor on three of the asserted patents, withheld two references (the "Yearwood documents") from the Patent Office (PTO) with the specific intent to deceive.  BSC's sole allegation about intent

merely repeats the element of the defense, which is insufficient under the law.  BSC also fails to show that the two supposedly withheld references are material and non-cumulative, as it fails to explain "how" the Yearwood documents disclose every claim element and "why" the examiner would have found Yearwood relevant.  BSC does not make those allegations because the Yearwood documents do not disclose numerous elements of the asserted claims, and they are not material.  BSC should not be permitted to advance an inequitable conduct claim where it cannot meet the basic pleading standards.

BSC's unclean hands defense is even more conclusory.  BSC essentially alleges that Nevro has unclean hands because Nevro willfully infringes two unrelated BSC patents, and has misappropriated BSC's trade secrets.  But neither of these allegations, even if true, satisfies a fundamental requirement of an unclean hands defense—that the alleged "unclean" conduct have an immediate and necessary relationship to Nevro's patent infringement claim.  In fact, allowing BSC's unclean hands defense would permit pleading such a defense in every case where the parties have had previous disputes or where counterclaims are involved.  Courts have definitively rejected such an expansive view of unclean hands.

BSC should not be permitted to inject into this case fraud-based defenses with allegations that are woefully deficient and fail to meet the heightened pleading requirements of Rule 9(b).

## II.     NATURE AND STAGE OF PROCEEDINGS

Nevro filed this action on February 23, 2021.  BSC moved to dismiss the complaint under 35 U.S.C. § 101, and the Court denied that motion on December 20, 2021 (D.I. 24).  BSC filed its Answer on January 18, 2022 (D.I. 27), and fact discovery has begun.

## III.    STATEMENT OF FACTS

### A.     This Lawsuit

Nevro revolutionized SCS treatment with its paresthesia-free therapies and has been awarded numerous patents to protect its groundbreaking technology. D.I. 16 at 4-7.  The industry has recognized Nevro's technology as superior to BSC's, and as a result, BSC has systematically copied Nevro.  D.I. 16 at 7-10.  BSC's efforts to copy Nevro continue to this day.

In February 2021, Nevro filed this action to protect its groundbreaking paresthesia-free therapy.  Nevro is alleging that BSC infringes five Nevro patents that are directed to providing patients with paresthesia-free therapy spinal cord simulation ("SCS") therapy, including U.S. Patent Nos. 8,792,988 ('988 patent), 8,892,209 ('209 patent), and 9,333,357 ('357 patent), which each list Konstantinos Alataris as the first named inventor (collectively, the "Alataris patents").

### B.     BSC's Affirmative Defenses

BSC filed its Answer on January 18, 2022, which included twelve affirmative defenses.  D.I. 27.  Affirmative defense number eight alleges that

3

Nevro's patent infringement claims are barred by the doctrine of unclean hands.  D.I. 27 at 14.  The basis for BSC's allegation is that Nevro should not be permitted to enforce its patents directed to paresthesia-free therapy because a jury found that Nevro infringed two BSC patents directed to stimulation leads, a different technology.

Affirmative defense number twelve alleges that the Alataris patents are unenforceable because James Thacker, a named inventor on each patent, did not disclose two documents to the PTO during prosecution of the Alataris patents.  D.I. 27 at 15-18.  The two documents are an article and a poster authored by Thomas Yearwood in October 2006 (the "Yearwood documents") describing a three-person study that he had performed using a BSC device.  BSC alleges these documents anticipate the asserted claims, in effect, arguing that BSC and Dr. Yearwood invented paresthesia-free SCS therapy years before Nevro did.  But the industry was skeptical of Nevro's therapy when it was introduced, and it took the industry years to recognize that Nevro's groundbreaking technology was superior to the conventional approach.  D.I. 1 at ¶¶7-10.  Contrary to BSC's assertions, the Yearwood documents do not disclose numerous elements of the asserted claims, and actually teach the opposite of Nevro's patents, *i.e.*, that therapy should be paresthesia-based.  That teaching by Yearwood is consistent with conventional wisdom in the industry at that time, which taught that paresthesia—a tingling or

numbness sensation in the patient—was an essential element of effective SCS therapy.  D.I. 1 at ¶4.  In a BSC sponsored study, one of its own co-author scientists asserted in 2007, just one year after the Yearwood documents, that "[p]atient-perceived concordant paresthesia overlapping the area of pain is essential for success of this therapy."  *Id.*

BSC advanced the same inequitable conduct theory in the California action (3:16-cv-6830-VC (N.D. Cal.)), where Nevro had asserted the '988 and '357 patents against different BSC products, but BSC dropped that theory from the case after fact discovery was complete.  BSC pursued its inequitable conduct theory through fact discovery and took Mr. Thacker's deposition, but BSC was unable to substantiate its allegations and did not include that theory in its expert reports.  Despite having previously taken fact discovery on its inequitable conduct theory in the California action, it is telling that BSC's Answer still fails to include any specific factual allegations about whether Mr. Thacker acted with intent to deceive the PTO by not disclosing the Yearwood documents.

## IV.    LEGAL STANDARD FOR MOTION TO STRIKE

Federal Rule of Civil Procedure 12(f) provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Such a motion offers the primary opportunity for a plaintiff to object to affirmative defenses.  "The purpose of a motion to strike

is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." *McInerney v. Moyer Lumber & Hardware, Inc.*, 244 F. Supp. 2d 393, 402 (E.D. Pa. 2002).

Motions to strike are granted "when a defense is legally insufficient under any set of facts which may be inferred from the allegations of the pleading." *Glenside West Corp. v. Exxon Co.*, 761 F. Supp. 1100, 1115 (D.N.J. 1991); *In re Gabapentin Patent Litigation*, 648 F. Supp. 2d 641, 648 (D.N.J. 2009).

## V.   ARGUMENT

### A.   BSC's Inequitable Conduct Defense Should Be Stricken

Inequitable conduct is a fraud-based defense, and as such, must be pled with particularity under Rule 9(b). *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1326 (Fed. Cir. 2009). To prove inequitable conduct, an accused infringer must present evidence that the applicant both (i) made an affirmative misrepresentation of a material fact or failed to disclose material information, and (ii) in doing so, acted with intent to deceive the PTO. *See id.* at 1328-29.

The Federal Circuit has explained that to plead the "circumstances" of both elements of inequitable conduct with the requisite "particularity" under Rule 9(b), "the pleading must identify the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Exergen*, 575 F.3d at 1328. The pleading must also include "sufficient allegations of

underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO." *Id.* at 1328-29.

In its Answer, BSC fails to set forth sufficient facts from which it can be reasonably inferred either that the Yearwood documents were material or that Mr. Thacker chose to withhold those documents with the intent to deceive the PTO, much less both. BSC's failure is telling because it already took fact discovery on this issue in the California action and it had the opportunity to develop relevant facts.

### 1.    BSC Fails to Allege Facts Sufficient to Show Materiality

BSC fails to plead facts sufficient to permit a plausible inference that the PTO would have refused to issue the Alataris patents had the Yearwood documents been submitted. In particular, the Answer fails to allege "how" the Yearwood documents are material and would have been used by an examiner and "why" the Yearwood documents are not cumulative of what the examiner was considering.

BSC's Answer is long on generalities, and short on specifics. BSC alleges generally that the Yearwood documents anticipate asserted claim 1 of each patent, but BSC identifies only a subset of the claim elements as purportedly disclosed by Yearwood. D.I. 27 at 16. For example, BSC makes no allegations

about whether the Yearwood documents disclose "a plurality of sequential bi-phasic pulses" ('209 and '357 claim 1), "a plurality of bi-phasic pulses" ('988 claim 1), or a "signal delivery device positioned to deliver the therapy signal to the patient's spinal cord at a vertebral level between T9 and T12, inclusively" ('988 claim 1). BSC's allegations, even if true, therefore fail to show "how" the Yearwood documents anticipate or are material to the Alataris patents.

BSC also generally asserts that the Yearwood documents can be combined with a variety of other references to render the asserted claims obvious, but BSC fails to allege that those other references disclose any elements of the asserted claims. D.I. 27 at 16-17. "Such allegations are necessary to explain … 'how' an examiner would have used this information in assessing the patentability of the claims." *Exergen*, 575 F.3d at 1329-30. BSC also makes no allegations with respect to a rationale to combine the references, which is required to prove obviousness. BSC has thus failed to plead facts that would allow a plausible inference that the Yearwood documents would have been material to the patentability of the asserted claims. *Id.* at 1329-30; *see Easton Technical Prods.*, 2019 WL 1513463, at *5 (finding pleading lacked "the requisite specificity how a reasonable examiner would use the omitted prior art references in determining the patentability").

With respect to the "why," BSC asserts in conclusory fashion that the Yearwood documents are "non-cumulative" of the art that was already being considered by the examiner.  D.I. 27 at 15.  But BSC does not identify any claim elements that were not in the prior art before the examiner but that do appear in the Yearwood documents or any inaccuracies in the examiner's analysis that would be remedied by those documents.  "Such allegations are necessary to explain … 'why' the withheld information is material and not cumulative."  *Exergen*, 575 F.3d at 1329-30 (finding pleading did not allege the "why" where it did "not identify the particular claim limitations, or combination of claim limitations, that are supposedly absent from the information of record" before the examiner).  BSC has therefore failed to plead facts that would allow a plausible inference that the Yearwood documents are non-cumulative.  *Id.* at 1329-30 (affirming dismissal on that basis); *Easton Technical Prods., Inc. v. FeraDyne Outdoors*, C.A. No. 18-1222-RGA, 2019 WL 1513463, at *5 (D. Del. Apr. 8, 2019) (finding that a "general statement [that] does not identify the particular claim limitations, or combination of claim limitations, that are supposedly absent from the information of record" to be insufficient to show art was non-cumulative).

In sum, BSC has failed to allege facts sufficient to show that the Yearwood documents are both material and non-cumulative, and therefore, its allegations fail under Rule 9(b).

### 2.    BSC Identifies No Facts to Support Its Allegation of Intent to Deceive

BSC's pleading also fails with respect to the intent prong of inequitable conduct, which is a separate and required element of the defense. "Intent and materiality are separate requirements.... [A] court must weigh the evidence of intent to deceive independent of its analysis of materiality." *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011). Thus, BSC cannot argue that its factual assertions about materiality alone are sufficient to infer intent.

BSC alleges no facts from which the Court could reasonably infer that, by not disclosing the Yearwood documents, Mr. Thacker acted with the intent to deceive the PTO. *See Exergen*, 575 F.3d at 1327. To show intent to deceive by omitting a reference, BSC is required to plead facts that could "plausibly suggest a[] 'deliberate decision to withhold a known material reference.'" *Id.* at 1331. BSC's Answer contains no underlying facts about whether Mr. Thacker deliberately chose to withhold the Yearwood documents.

The Answer includes just half of a conclusory sentence about intent, which is reproduced below:

> On information and belief Mr. Thacker was aware that the Yearwood Case Report and the Yearwood Poster were material to the applications for the Alataris Patents and *withheld them from the examiner and the USPTO with an intent to deceive the USPTO into allowing the Alataris Patents*.

10

D.I. 27 at 18 (emphasis added).  BSC's allegation simply restates the substantive element of intent.  BSC makes no allegations with respect to what Mr. Thacker understood the references to mean, whether Mr. Thacker decided not to disclose the references, and if so, why or whether he believed that he would deceive the PTO into granting the patents by not submitting them.  As the Federal Circuit has explained, "[a] pleading that simply avers the substantive elements of inequitable conduct, without setting forth the particularized factual bases for the allegation, does not satisfy Rule 9(b)."  *Exergen*, 575 F.3d at 1326-27.  BSC's pleading fails this basic requirement of Rule 9(b).

BSC also pleads no allegations about whether in April 2009 (the earliest priority date of the Alataris patents) or at any time when the Alataris patent applications were pending, Mr. Thacker recalled the Yearwood documents or believed that they were material.  BSC alleges only that Mr. Thacker received the Yearwood documents as part of his work at BSC between 2004 and 2006, which was three years before the earliest provisional application leading to the Alataris patents was filed.  Simply receiving the documents in 2006 says nothing about Mr. Thacker's mental state in 2009 or his belief about whether the documents would have been material.

Following the Federal Circuit's *Exergen* decision, courts that have considered bare-bones allegations like those in BSC's Answer have concluded that

they fail to meeting the standard for pleading the intent element of inequitable conduct. For example, in *Easton Technical Prods., Inc. v. FeraDyne Outdoors*, the Court found the accused infringer FeraDyne's inequitable conduct defense to be insufficient under Rule 9(b). C.A. No. 18-1222-RGA, 2019 WL 1513463, at *7 (D. Del. Apr. 8, 2019). FeraDyne alleged that Mr. Palomaki, a vice president at Easton, failed to disclose certain references to the PTO, and alleged that "the prior art was withheld by Mr. Palomaki and Easton with the specific intent of deceiving the examiner and the [USPTO]" and that "Mr. Palomaki and Easton engaged in a pattern of lack of candor [to the PTO]." *Id.* The Court found these allegations insufficient, explaining that to adequately plead "deceptive intent…, the pleading must 'contain specific factual allegations' showing that a specific individual with knowledge of the material information 'decided to deliberately withhold it from the relevant examiner.'" *Id.* (*citations omitted*). Like FeraDyne, BSC's Answer lacks any specific factual allegations showing the Mr. Thacker decided to deliberately withhold material information.

In *Human Genome Sciences, Inc. v. Genentech, Inc.*, the accused infringer pled that patent owner Genentech "'knowingly, deliberately, and with the specific intent to deceive the PTO' failed to disclose [prior art]." No. 2:11-cv-6519, 2011 WL 7461786, *4 (C.D. Cal Dec. 9, 2011). The court concluded that assertion was insufficient to allege intent to deceive. The court explained that "the accused

infringer must allege facts from which it is plausible that the applicant had an intent to deceive" and "the mere fact that an applicant omitted a piece of prior art is inadequate by itself." *Id.* at *3.  That is all BSC's allegations regarding intent amount to in its Answer, and that is insufficient.  Courts have reached similar conclusions in granting summary judgment as well.  *See, e.g.*, *Greatbatch Ltd. v. AVX Corp.*, C.A. No. 13-723-LPS, 2015 WL 9171042, *13 (D. Del. Sept. 11, 2015) ( "Because [the inventor's] failure to disclose the []prior art, by itself, is insufficient to show intent—yet that is the only evidence of intent to which [defendant] points— the record does not support a reasonable finding that [the inventor] acted with deceptive intent.").

BSC's deficiency is particularly notable here because this is not the first time that the parties have litigated the '357 and '988 patents.  Nevro asserted the '357 and '988 patents against different BSC products in the California action, and the parties litigated those claims through expert discovery.  In that case, BSC alleged the same inequitable conduct theory it advances here, and BSC had the opportunity to take discovery (including taking Mr. Thacker's deposition in December 2017) and develop a record to support its theory.  If BSC had uncovered any favorable facts to support its inequitable conduct assertions, it would have alleged them here.  But BSC's Answer is bereft of any allegation about Mr. Thacker's intent or about his knowledge in 2009 (as opposed to in 2004 to 2006).  Allowing BSC's inequitable

conduct defense to remain will waste the parties' and the Court's resources while BSC goes on another fishing expedition chasing allegations for which there is no factual basis.  This is exactly the type of baseless inequitable conduct pleading that the Chief Judge Rader called a "plague" and the *en banc* Federal Circuit sought to eliminate in *Therasense*.  *See Therasense*, 649 F.3d at 1289.

BSC's bare allegation that Mr. Thacker acted with deceptive intent, without alleging any underlying facts to support it, is insufficient under Rule 9(b) and should be stricken.  BSC should not be permitted to pursue a defense that will impose substantial additional costs on the parties and Court in discovery and at trial, where BSC cannot meet basic, well-established pleading requirements.  *See McInerney*, 244 F. Supp. 2d at 402.

## B.   BSC's Unclean Hands Defense Should Be Stricken

BSC's unclean hands defense also should be stricken.  "The equitable doctrine of unclean hands applies when a party seeking relief has committed an unconscionable act *immediately related* to the equity the party seeks in respect to the litigation."  *Highmark, Inc. v. UPMC Health Plan, Inc.*, 276 F.3d 160, 174 (3d Cir. 2001) (citing *Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240, 245 (1933)).  The unconscionable act must be severe.  It must "shock the moral sensibilities of the judge" and be "offensive to the dictates of natural justice." *Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp.*, 398 F. Supp. 2d 305, 310 (D.

Del. 2005) (citations omitted).  Moreover, the nexus "between the misconduct and the claim must be close." *Highmark*, 276 F.3d at 174; *Scherer Design Grp, LLC v. Ahead Eng'g LLC*, 764 F. App'x 147, 151 (3d Cir. 2019); *see also Sanofi-Synthelabo v. Apotex, Inc.*, 470 F.3d 1368, 1384 (Fed. Cir. 2006); *Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*, No. 2:15-CV-1202-WCB, 2017 WL 275465, at *7 (E.D. Tex. Jan. 20, 2017).

A party asserting this defense "bears the burden of proving by clear and convincing evidence that [the opposing party] acted with unclean hands." *In re Omeprazole Patent Litig.*, 483 F.3d 1364, 1374 (Fed. Cir. 2007).  Unclean hands must be pled with particularity under Rule 9(b).  *Bench Walk Lighting LLC v. Everlight Elecs. Co.*, C.A. No. 20-49-RGA, 2020 WL 5128086, at *1 (D. Del. Aug. 31, 2020); *Cephalon, Inc. v. Slayback Pharma Ltd. Liab. Co.*, C.A. No. 17-1154-CFC, 2019 WL 3497105, at *1 (D. Del. Aug. 1, 2019).

BSC's unclean hands defense fails to meet either the pleading or the substantive requirements.

BSC first alleges that Nevro has unclean hands because Nevro willfully infringed a BSC patent and intends to continue infringing.  D.I. 27 at 14.  This allegation fails because it does not rise to the level of unconscionable, morally-shocking conduct.  *See Highmark*, 276 F.3d at 174; *Scherer*, 764 F. App'x at 150-51; *Honeywell*, 398 F. Supp. 2d at 310.  The allegation is particularly feeble because

the jury found willful infringement of only one BSC patent, which was directed to stimulation leads, and the infringement period was truncated and ended eight years ago. *See* D.I. 847 at 6 (BSC admitting that "[a]fter a manufacturing change implemented in November 2014, Nevro's leads no longer infringe the '085 Patent"). Even if that infringement finding is not overturned after post-trial motions or on appeal, it is not morally shocking conduct. Nevro's press release stating that the October 2021 jury award is not an injunction, and that and Nevro is still the "exclusive provider" of high-frequency, paresthesia-free therapy, likewise cannot possibly justify invalidating five patents on Nevro's core paresthesia-free technology. D.I. 848, Ex. A at 1-2. BSC's position that this press release can constitute unclean hands rendering multiple unrelated patents unenforceable is outlandish.

In addition, Nevro's alleged willful and continued infringement of BSC's patents has no nexus to Nevro's patent infringement claims, much less a "close" nexus. *See Highmark*, 276 F.3d at 174; *Scherer*, 764 F. App'x at 151; *Sanofi-Synthelabo*, 470 F.3d at 1384. *Magnesystems, Inc. v. Nikken, Inc.*, 933 F. Supp. 944, 953 (C.D. Cal. 1996), is directly on point. There, the court rejected an unclean hands defense based on alleged willful infringement of the opposing party's patents. The court deemed the defense "bogus," and an "unprecedented stretch of

the doctrine" that "makes little sense and is not grounded in law." *Id.* The court explained:

> Defendants contend that because Plaintiff has behaved inequitably by willfully infringing Defendants' own patents, the [asserted] Patent should be rendered unenforceable by Plaintiff. *The Court has seen no cases applying the unclean hands doctrine to Defendants' novel theory. This is not surprising, for it would be an unprecedented stretch of the doctrine.* First, Plaintiff's alleged misconduct has no direct relationship to the [asserted] Patent or Plaintiff's conduct in obtaining the patent-in-suit. Although the "unclean hands" doctrine is broad, it does require a connection to the matter in which [the plaintiff] seeks relief.

*Id.* (emphasis added). The Court should not dramatically expand the unclean hands doctrine to allow BSC to parade its willful infringement verdict pertaining to an unrelated patent before the next jury.

BSC next alleges that "Nevro's SCS platform was developed using Boston Scientific confidential information and patented technology." D.I. 27 at 14. This allegation lacks any nexus to Nevro's patent infringement claims, much less a "close" nexus. *See Highmark*, 276 F.3d at 174; *Scherer*, 764 F. App'x at 151; *Sanofi-Synthelabo*, 470 F.3d at 1384. The asserted Nevro patents relate to one of Nevro's core technologies, paresthesia-free therapy, and they have nothing to do with BSC's alleged trade secrets or patents. Permitting an unclean hands defense based merely on an alleged tort committed by the opposing party that has no immediate and necessary relationship to the asserted claims would violate fundamental tenets of the unclean hands doctrine, and permit an unclean hands

17

defense in most cases.  *See Highmark*, 276 F.3d at 174; *Magnesystems*, 933 F. Supp. at 953.   Furthermore, a single vague, conclusory assertion unsupported by underpinning factual allegations does not satisfy Rule 9(b)'s particularity standard. *See Bench Walk Lighting*, 2020 WL 5128086, at *1.  BSC should not be permitted to inject its trade secret claim wholesale into this separate case based on a legally infirm and conclusory allegation.

Lastly, BSC alleges that "Nevro procured the asserted patents in this case by inequitable means, including based on facts and evidence that Boston Scientific expects to obtain during discovery…."  D.I. 27 at 14.  This conclusory allegation fails to satisfy Rule 9(b)'s particularity standard.   *See Bench Walk Lighting*, 2020 WL 5128086, at *1.  To the extent this allegation merely rehashes BSC's inequitable conduct defense, the allegation is duplicative and should be dismissed.  *See Baxalta, Inc. v. Bayer Healthcare LLC*, C.A. No. 17-1316-RGA-SRF, 2020 WL 5445375, at *13 (D. Del. July 13, 2020) (dismissing unclean hands defense that repeated inequitable conduct defense); *Human Genome Sciences, Inc. v. Genentech, Inc.*, 2011 WL 7461786, *8 (C.D. Cal. 2011) (same).

Accordingly, BSC's unclean hands defense also fails to satisfy basic requirements for pleading unclean hands, and should be stricken.

## VI.   CONCLUSION

For these reasons, Nevro's motion should be granted.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Rodger D. Smith II*

_____

Rodger D. Smith II (#3778)
Michael J. Flynn (#5333)
Lucinda C. Cucuzzella (#3491)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
rsmith@morrisnichols.com
mflynn@morrisnichols.com
ccucuzzella@morrisnichols.com

*Attorneys for Plaintiff*

OF COUNSEL:

Bradford J. Badke
Ching-Lee Fukuda
Sharon Lee
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY  10019
(212) 839-5300

Thomas A. Broughan III
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, DC  20005
(202) 736-8000

Nathan A. Greenblatt
SIDLEY AUSTIN LLP
1001 Page Mill Road
Building 1
Palo Alto, CA 94304
(650) 565-7000

February 8, 2022

19

## **WORD COUNT CERTIFICATION**

The undersigned counsel hereby certifies that the foregoing document contains 4,161 words, which were counted by using the word count feature in Microsoft Word, in 14-point Times New Roman font.  The word count includes only the body of the brief.  The word count does not include the cover page, tables of contents and authorities, or the counsel blocks.

*/s/ Rodger D. Smith II*

Rodger D. Smith II (#3778)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 8, 2022, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on February 8, 2022, upon the following in the manner indicated:

Brian E. Farnan, Esquire                                      *VIA ELECTRONIC MAIL*
Michael J. Farnan, Esquire
FARNAN LLP
919 North Market Street, 12th Floor
Wilmington, DE  19801
*Attorneys for Defendants*

Michael P. Kahn, Esquire                                      *VIA ELECTRONIC MAIL*
Caitlin E. Olwell, Esquire
Brooks J. Kenyon, Esquire
AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park, Bank of America Tower
New York, NY 10036-6745
*Attorneys for Defendants*

Rachel J. Elsby, Esquire                                      *VIA ELECTRONIC MAIL*
AKIN GUMP STRAUSS HAUER & FELD LLP
Robert S. Strauss Tower
2001 K Street, N.W.
Washington, DC 20006-1037
*Attorneys for Defendants*

Steven D. Maslowski, Esquire                                  *VIA ELECTRONIC MAIL*
AKIN GUMP STRAUSS HAUER & FELD LLP
1735 Market Street, 12th Floor
Philadelphia, PA  19103-7501
*Attorneys for Defendants*

Matthew M. Wolf, Esquire                        *VIA ELECTRONIC MAIL*
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, DC 20001-3743
*Attorneys for Defendants*

/s/ *Rodger D. Smith II*

_____

Rodger D. Smith II (#3778)