## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NEVRO CORP., | |
| Plaintiff, | |
| v. | C.A. No. 21-258-CFC |
| BOSTON SCIENTIFIC CORP. AND BOSTON SCIENTIFIC NEUROMODULATION CORP., | **JURY TRIAL DEMANDED** |
| Defendants. | |

## BOSTON SCIENTIFIC'S ANSWERING BRIEF IN OPPOSITION TO NEVRO'S MOTION TO STRIKE

DATED:  February 22, 2022

Michael P. Kahn
Caitlin Olwell
Brooks Kenyon
**Akin Gump Strauss Hauer & Feld LLP**
One Bryant Park, Bank of America Tower
New York, NY 10036-6745
(212) 872-1000
mkahn@akingump.com
colwell@akingump.com
bkenyon@akingump.com

Steven D. Maslowski
**Akin Gump Strauss Hauer & Feld LLP**
1735 Market Street, 12th Floor
Philadelphia, PA 19103-7501
(215) 965-1200
smaslowski@akingump.com

Brian Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
**Farnan LLP**
919 N. Market Street
12th Floor
Wilmington, Delaware 19801
(302) 777-0300
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

*Attorneys for Defendants Boston Scientific Corporation and Boston Scientific Neuromodulation Corp.*

Rachel J. Elsby
**Akin Gump Strauss Hauer & Feld LLP**
Robert S. Strauss Tower
2001 K Street, N.W.
Washington, DC 20006-1037
(202) 887-4000
relsby@akingump.com

## **TABLE OF CONTENTS**

I.      INTRODUCTION ............................................................................1

II.     NATURE AND STAGE OF PROCEEDINGS..............................................2

III.    STATEMENT OF FACTS ...............................................................3

        A.    Nevro's Stop-and-Start Allegations over "Paresthesia-Free" Therapy.......................................................................3

        B.    Boston Scientific's Inequitable Conduct Defense First Filed in the California Action .............................................4

        C.    Nevro's Unclean Hands ...........................................................5

IV.     LEGAL STANDARD FOR MOTIONS TO STRIKE ...................................6

V.      BOSTON SCIENTIFIC'S INEQUITABLE CONDUCT DEFENSE IS PLED WITH SUFFICIENT PARTICULARITY .....................................................7

        A.    Boston Scientific Sufficiently Pled Materiality ...................7

        B.    Boston Scientific Sufficiently Pled Intent...........................12

VI.     BOSTON SCIENTIFIC SUFFICIENTLY PLED UNCLEAN HANDS WITH A NEXUS TO NEVRO'S CLAIMS...............................................15

        A.    Rule 9(b) Does Not Apply; Unclean Hands is Sufficiently Pled ........15

        B.    Boston Scientific Pled A Sufficient Nexus Between Its Unclean Hands Defenses and Nevro's Patent Infringement Claims.................19

VII.    Boston Scientific Should Be Permitted To Amend, If Necessary..............21

VIII.   CONCLUSION................................................................................22

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AbbVie Inc. v. Boehringer Ingelheim Int'l GmbH*,
    No. 17-1065-MSG-RL, 2018 WL 2604825 (D. Del. June 4, 2018)..................18

*AbbVie Inc. v. Boehringer Inhelheim Int'l GmbH*,
    No. 17-CV-01065-MSG-RL, 2019 WL 917990 (D. Del. Feb. 25,
    2019) .................................................................................................15

*Diebold Nixdorf, Inc. v. Hyosung Tns, Inc.*,
    No. CV 19-1695-LPS, 2021 WL 861734 (D. Del. Mar. 4, 2021)......................8

*Easton Tech. Prods. v. FeraDyne Outdoors, LLC*,
    No. CV 18-1222-RGA, 2019 WL 1513463 (D. Del. Apr. 8, 2019)..............9, 14

*Edge Sys. LLC v. Cartessa Aesthetics, LLC*,
    No. 20-CV-6082 (GRB)(ST), 2021 WL 5563751 (E.D.N.Y. Nov.
    29, 2021) .......................................................................................17, 18

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
    575 F.3d 1312 (Fed. Cir. 2009) ..................................................10, 12

*Fesnak & Assocs., LLP v. U.S. Bank Nat. Ass'n*,
    722 F. Supp. 2d 496 (D. Del. 2010)....................................................7

*Gilead Scis., Inc. v. Merck & Co.*,
    888 F.3d 1231 (Fed. Cir. 2018) ......................................................16

*Gilead Scis., Inc. v. Merck & Co, Inc.*,
    No. 13-CV-04057-BLF, 2016 WL 3143943 (N.D. Cal. June 6,
    2016) ...........................................................................................17, 21

*Hazel-Atlas Glass Co. v. Hartford-Empire Co.*,
    322 U.S. 238 (1944).........................................................................16

*Hum. Genome Scis., Inc. v. Genentech, Inc.*,
    No. 2:11-cv-6519, 2011 WL 7461786 (C.D. Cal. Dec. 9, 2011) ..................15

*Illumina Inc. v. BGI Genomics Co.*,
  No. 20-cv-01465-WHO, 2021 WL 428632 (N.D. Cal. Feb. 8,
  2021) .......................................................................................................13

*In Clements Indus., Inc. v. A. Meyers & Sons Corp.*,
  712 F. Supp. 317 (S.D.N.Y. 1989) ....................................................16

*Intell. Ventures I LLC v. Symantec Corp.*,
  No. CV 13-440-LPS, 2014 WL 4773954 (D. Del. Sept. 24, 2014) ................6, 7

*Jazz Pharms., Inc. v. Roxane Lab'ys, Inc.*,
  No. 2:10-CV-06108-ES-JAD, 2013 WL 6858765 (D.N.J. Dec. 30,
  2013) ...............................................................................................20, 21

*Magnesystems, Inc. v. Nikken, Inc.*,
  933 F. Supp. 944 (C.D. Cal. 1996) ....................................................18

*Micron Tech., Inc. v. Rambus Inc.*,
  No. CV 00-792 (SLR), 2007 WL 9771143 (D. Del. Aug. 29, 2007)................21

*Quest Integrity USA, LLC v. Clean Harbors Indus. Servs., Inc.*,
  No. CV 14-1482-SLR, 2015 WL 4477700 (D. Del. July 22, 2015) ...................8

*Sanders v. The Mosaic Co.*,
  418 F. App'x 914 (Fed. Cir. 2011) ....................................................12

*Schlumberger Tech. Corp. v. Bico Drilling Tools, Inc.*,
  No. CV H-17-3211, 2018 WL 2059399 (S.D. Tex. May 3, 2018) ...................13

*Southco, Inc. v. Penn Eng'g & Mfg. Corp.*,
  768 F. Supp. 2d 715 (D. Del. 2011)....................................................11

*Sun Microsystems, Inc. v. Versata Enterprises, Inc.*,
  630 F. Supp. 2d 395 (D. Del. 2009)...............................................20, 21

*Symbol Techs. Inc. v. Aruba Networks, Inc.*,
  609 F. Supp. 2d 353 (D. Del. 2009)................................................. 6-7

*Targus Int'l LLC v. Victorinox Swiss Army, Inc.*,
  No. 20-CV-464-RGA, 2021 WL 2291978 (D. Del. June 4, 2021) .......... 9-10, 13

*The Medicines Co. v. Teva Parenteral Medicines, Inc.*,
  No. CV 09-750-ER, 2011 WL 13135647 (D. Del. Aug. 26, 2011) ...................14

*Zadro Prod., Inc. v. SDI Techs., Inc.*,
No. 17-1406 (WCB), 2019 WL 1100470 (D. Del. Mar. 8, 2019)...............12, 13

## I.      INTRODUCTION

Nevro's opening brief admits that it asserted some of the same patents against Boston Scientific in California in 2016 and in this case in 2021.  Nevro also admits that, in both cases, Boston Scientific pled the same inequitable conduct defense.  Nevro omits, however, that it did not move to strike that defense in California.  And Boston Scientific never "dropped that theory," as Nevro argues.  Instead, years into the California litigation, Nevro moved for summary judgment alleging Boston Scientific's inequitable conduct allegation failed. Before the court in California could decide that issue, Nevro abandoned its case by stipulating to a dismissal with prejudice.  Two months after choosing to dismiss the California case, Nevro refiled the same patent claims here against Boston Scientific's newer spinal cord stimulation ("SCS") systems.  Nevro now repackages its California summary judgment arguments in a motion to strike.  Those arguments address the weight of the evidence and not the sufficiency of the pleading.  Nevro's motion to strike Boston Scientific's inequitable conduct defense should be denied.

Nevro's motion also seeks to strike Boston Scientific's unclean hands defense.  Boston Scientific alleges that Nevro relied on information obtained from former Boston Scientific employees, who are now Nevro's named inventors, for its patent applications *in this case*.  Boston Scientific also alleges that Nevro used Boston Scientific's patented lead technology for the work recited in the asserted patents—

and continues to use that technology today, despite a jury verdict of infringement. This sort of bad faith and deceitful conduct has a nexus to Nevro's claims and is relevant to Nevro's request for equitable relief.  Notably, apart from the portion of Boston Scientific's defense that cites inequitable conduct, the allegations do not sound in fraud and therefore are not governed by Federal Rule of Civil Procedure 9(b).  Nevro's motion with respect to unclean hands should also be denied.

Finally, should this Court determine that Boston Scientific's defenses are inadequately pled at this early stage, Boston Scientific respectfully requests leave to amend.

## II.    NATURE AND STAGE OF PROCEEDINGS

In February 2021, Nevro filed this lawsuit against Boston Scientific alleging infringement of U.S. Patent Nos. 10,556,112 ("the '112 Patent"); 10,576,286 ("the '286 Patent"); 8,892,209 ("the '209 Patent"); 8,792,988 ("the '988 Patent"); and 9,333,357 ("the '357 Patent") (collectively, the "Asserted Patents").  D.I. 1.  The '357, '988, and '209 Patents (collectively, the "Alataris Patents") are related within one patent family.  The '112 and '286 Patents (collectively, the "Park Patents") are also related within another patent family.  All of Nevro's Asserted Patents address aspects of what Nevro refers to as "paresthesia-free" therapy.

2

On January 18, 2022, Boston Scientific filed an Answer asserting twelve defenses.  D.I. 27 at 13-18.  Nevro's motion to strike addresses two of those defenses: inequitable conduct and unclean hands.  D.I. 31; *see* D.I. 32 ("Nevro Br.").

## III.   STATEMENT OF FACTS

### A.   Nevro's Stop-and-Start Allegations over "Paresthesia-Free" Therapy

Over the last five years, Nevro has filed multiple patent infringement claims and counterclaims against Boston Scientific concerning related (and in some instances, identical) patents.

***Case No. 1 (2016):*** Nevro began this multi-front legal battle in November 2016 in the Northern District of California ("California Action") accusing Boston Scientific of infringing multiple patents directed to aspects of "paresthesia-free" therapy.[1]  Those accusations failed; at the end of 2020, facing motions for summary judgment of non-infringement and invalidity, Nevro abandoned its patent claims and stipulated to a dismissal with prejudice.  *See* Ex. A at 1 (Dismissal Order).[2]

***Case No. 2 (2019):*** Nevro filed counterclaims against Boston Scientific in Delaware ("Nevro II") for infringing additional patents, including U.S. Patent No.

───────────────

[1] *Nevro Corp. v. Boston Scientific Corp. et al.*, No. 3:16-cv-06830-VC-MEJ (N.D. Cal.).

[2] Exhibits cited herein are to the Declaration of Caitlin E. Olwell.

3

10,149,978 ("the '978 Patent") directed to "paresthesia-free" therapy at a specific frequency, 1200 Hz.[3]

**Case No. 3 (2021):** Two months after abandoning its patent infringement claims in the California Action, Nevro refiled infringement allegations over the '357 and '988 Patents in this Court, but asserted infringement only by Boston Scientific's newer products that were not at issue in the California Action. *See* D.I. 1 at ¶¶ 80-86, 98-105. Nevro also added three more patents to the Complaint—the '209 Patent, which is in the same Alataris family as the two previously-asserted patents, and the '112 and '286 Patents, which are both in the Park family and are related to the '978 Patent asserted in the Nevro II case. All of the Alataris and Park Patents are directed to various aspects of "paresthesia-free" therapy.

## B. Boston Scientific's Inequitable Conduct Defense First Filed in the California Action

Boston Scientific's inequitable conduct defense is the same as that alleged in the California Action and not challenged by Nevro on the pleadings in that case:

- *But-for Materiality:* Dr. Thomas Yearwood published a 2006 case report and poster presentation ("Yearwood References") showing pain relief without paresthesia using Boston Scientific's Precision™ SCS System and those publications are material and noncumulative prior art that would anticipate or render obvious the Alataris Patent claims. *Compare* D.I. 27 at 15-18, *with* Ex. B at 19-21 (Boston Scientific's Amended Answer); Ex.

---

[3] *Boston Scientific Corp. et al. v. Nevro Corp.*, No. CV 18-664-CFC-CJB (D. Del.).

C, BSC-NVRO_00006055 at 6055-56 (Yearwood Case Report); Ex. D, BSC-NVRO-DE_00031597 at 31597-31603 (Yearwood Poster).

- *Knowledge and Specific Intent to Deceive:* James Thacker—a former Boston Scientific clinical engineer and named inventor on the Alataris Patents—collaborated with and was heavily involved in Dr. Yearwood's paresthesia-free research. Yet, Mr. Thacker withheld the Yearwood References from the Patent Office despite appreciating that his later-filed claims address the same technology published by Yearwood years before, with intent to deceive the Patent and Trademark Office ("PTO"). *Id.*

Boston Scientific maintained this defense throughout the life of the California Action. It was addressed during fact discovery and in expert reports. Nevro stipulated to a dismissal of the California Action shortly after the parties briefed summary judgment with respect to this defense. *See* Ex. E at 26-32 (Nevro's Motion for Summary Judgment); Ex. F at 37-39 (Boston Scientific's Opposition to Nevro's Motion for Summary Judgment); Ex. A at 1.

## C.   Nevro's Unclean Hands

Boston Scientific's unclean hands defense is based on Nevro's use of Boston Scientific technology and information for the work set forth in the Asserted Patents. Boston Scientific alleges that "Nevro's SCS platform was developed using Boston Scientific confidential information and patented technology." D.I. 27 at 14. Nevro hired former Boston Scientific employees, including Messrs. Thacker and Park—named inventors on the Asserted Patents here. *See* D.I. 1 at Exs. 1, 3, 5, 7, 9 at Covers. And both Messrs. Thacker and Park brought Boston Scientific documents to Nevro concerning SCS research and development, regulatory work, and

5

marketing plans.  *See, e.g.*, Ex. G at ¶¶ 197, 210-21, 234-37 (Third Amended Complaint).  Boston Scientific alleges unclean hands based in part on Nevro's use of that Boston Scientific information in the Asserted Patents in this case.  Nevro's broader theft and use of Boston Scientific's confidential information is the subject of a pending trade secret misappropriation claim brought by Boston Scientific against Nevro in Delaware. *See id.*

Boston Scientific also alleges unclean hands based upon Nevro's use of Boston Scientific's patented lead technology for the work that resulted in the Asserted Patents and because "despite a jury verdict[4] confirming Nevro's infringement, Nevro publicly stated that it intended to continue infringing."  D.I. 27 at 14.  In this case, Nevro pleads entitlement to equitable relief for alleged patent infringement, but opposes that same relief to stop Nevro's adjudicated infringement in the Nevro I case.  *Compare* D.I. 1 at 8, 37, *with* Ex. H at 1-2 (Nevro's Opposition to Equitable Relief).

## IV.    LEGAL STANDARD FOR MOTIONS TO STRIKE

Generally, motions to strike under Federal Rule of Civil Procedure Rule 12(f) are disfavored.  *Intell. Ventures I LLC v. Symantec Corp.*, No. CV 13-440-LPS, 2014 WL 4773954, at *2 (D. Del. Sept. 24, 2014); *Symbol Techs. Inc. v. Aruba Networks,*

---

[4] *Boston Scientific Corp. et al. v. Nevro Corp.*, No. CV 16-1163-CFC-CJB (D. Del.) ("Nevro I")*.*

*Inc.*, 609 F. Supp. 2d 353, 356 (D. Del. 2009). "A court should not strike a defense unless the insufficiency is clearly apparent." *Fesnak & Assocs., LLP v. U.S. Bank Nat. Ass'n*, 722 F. Supp. 2d 496, 502 (D. Del. 2010). A motion to strike "should be denied if disputed issues of fact or law are implicated or if the alleged insufficiency is not clearly apparent from the pleadings." *Intell. Ventures*, 2014 WL 4773954, at *2; *see also Fesnak*, 722 F. Supp. 2d at 502 ("[T]he court must construe all facts in favor of the nonmoving party and deny the motion if the defense is sufficient under law.").

## V.   BOSTON SCIENTIFIC'S INEQUITABLE CONDUCT DEFENSE IS PLED WITH SUFFICIENT PARTICULARITY

Nevro did not challenge the sufficiency of Boston Scientific's inequitable conduct defense in the California Action. And Nevro is on notice of the basis for Boston Scientific's defense given the sufficient detail in the Answer here and the parties' litigation in the California Action. The pleading standards do not require Boston Scientific to recite all of those facts and arguments in its Answer. Moreover, Nevro's motion to strike is nothing more than a desperate attempt to cut off a defense that threatens the Alataris Patents.

### A.   Boston Scientific Sufficiently Pled Materiality

Boston Scientific's pleading in this case recites sufficient facts showing a reasonable examiner would have considered the Yearwood References to be material and not cumulative. Boston Scientific alleged that the Yearwood References teach

7

using "sub-perception threshold stimulation (i.e., without paresthesia)," at "low amplitudes" and with "pulse widths between 10 microseconds and 1000 microseconds to provide treatment of low back pain." D.I. 27 at 17.  These are the same features and parameters claimed in the Alataris Patents.  *See, e.g.*, D.I. 1 at Ex. 10, 25:65-26:12 ('357 Patent).

Boston Scientific further alleged specific invalidity grounds and arguments for which the Yearwood References would have been used by the examiner to invalidate Nevro's claims.  For example, Boston Scientific alleged that the Yearwood References in combination with the Knudson prior art reference, would have rendered at least claim 1 of the '357 Patent obvious.  D.I. 27 at 16-17.  Disclosing specific obviousness grounds is more than sufficient at the pleading stage.  *See, e.g.*, *Diebold Nixdorf, Inc. v. Hyosung Tns, Inc.*, No. CV 19-1695-LPS, 2021 WL 861734, at *3-4 (D. Del. Mar. 4, 2021) (rejecting plaintiffs' contention that materiality was insufficiently pled because defendants did not "explain how the [reference] would change the obviousness analysis").  Nevro's disagreement goes to the merits of invalidity (and unenforceability) and not the sufficiency of the pleading.  *See* Nevro Br. at 8; *Quest Integrity USA, LLC v. Clean Harbors Indus. Servs., Inc.*, No. CV 14-1482-SLR, 2015 WL 4477700, at *4 (D. Del. July 22, 2015) ("At the pleading stage, the court does not decide the merits of the claim, only whether materiality has been alleged with sufficient particularity.").

Nevro's reliance on *Easton* does not lead to a different result.  Nevro Br. at 8-9.  Unlike the defendants in *Easton* who offered only a conclusory statement, Boston Scientific proffered a fact-based roadmap identifying, *inter alia*, disclosures in the Yearwood References that cover the Alataris Patent claims, prior art before the examiner, and obviousness combinations of that prior art with Yearwood References.  *See Easton Tech. Prods. v. FeraDyne Outdoors, LLC*, No. CV 18-1222-RGA, 2019 WL 1513463, at *5 (D. Del. Apr. 8, 2019); D.I. 27 at 16-17.  Moreover, in *Easton*, the acts alleged to have occurred could not have impacted the examiner because they took place after the asserted patent issued.  *Easton*, 2019 WL 1513463, at *5.  Here, by contrast, it is undisputed that Mr. Thacker's collaboration with Dr. Yearwood and the publication of the Yearwood References in 2006 occurred well prior to the earliest filing of the Alataris Patent applications in 2009.

Nevro's factual disputes do not speak to the sufficiency of the pleading; they are simply rehashed from Nevro's summary judgment brief in the California Action.  *See* Ex. E at 26-32; Ex. F at 37-39.  For example, Nevro's disputes as to **how** the Yearwood References would have been but-for material or **why** they were not cumulative does not render Boston Scientific's pleading insufficient.  *See* Nevro Br. at 7-9.  The pleading identifies those particularities of Nevro's inequitable conduct, which is all that is required at this stage of the case.  *See* D.I. 27 at 16-18; *Targus Int'l LLC v. Victorinox Swiss Army, Inc.*, No. 20-CV-464-RGA, 2021 WL 2291978,

at *5 (D. Del. June 4, 2021) (requiring a party to "'identify the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO'") (quoting *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1328 (Fed. Cir. 2009)).[5]

Nevro also rehashes its prior responses to Boston Scientific's invalidity grounds.  It targets specific claim language concerning, for example, "bi-phasic pulses," and argues that Boston Scientific makes no allegation concerning whether the Yearwood References disclose that well-known technique.  Nevro Br. at 7-8. Such element-by-element detail is not required at the pleading stage, and Nevro is well aware of "whether" Boston Scientific contends the Yearwood References disclose "bi-phasic pulses."  *Id.*  Boston Scientific's technical expert, Dr. Richard Mihran, offered an opinion on that question in the California Action.  Ex. I at ¶ 171 (Mihran Report).  Moreover, Boston Scientific alleged here that Yearwood is an anticipatory reference—*i.e.*, it discloses all claim limitations—so of course Boston Scientific has alleged "whether" that reference discloses that feature.  D.I. 27 at 16-17; Nevro Br. at 7-8.

---

[5] Nevro does not dispute that Boston Scientific has adequately pled the "who," "what," "when," and "where" requirements for materiality.

Similarly, Nevro is well aware of what "claim elements [] were not in the prior art before the examiner but [] do appear in the Yearwood [References]."  Nevro Br. at 9.[6]  Nevro has that information both from the Answer in this case and from expert discovery in the California Action.  Here, Boston Scientific alleged specific prior art that was before the examiner that would have rendered the Alataris Patents obvious when combined with the Yearwood References.  *See, e.g.*, D.I. 27 at 16 ("The examiner was already aware of Knudson '354, Kilgore '145, and De Ridder '488 references, as these references were cited on the face of the Alataris Patents.").  And, during expert discovery in the California Action, Dr. Mihran, offered opinions concerning what information is disclosed by the Yearwood References.  Ex. I ¶¶ 168-74, 1385-90, 1547-61.  Nevro's repeat argument that Boston Scientific "dropped that theory," failed to include it "in its expert reports," and did not "substantiate its allegations" in the California Action, is just wrong.  Nevro Br. at 5. Nevro has had far more than "fair notice" concerning the materiality of Nevro's withheld references.  *See Southco, Inc. v. Penn Eng'g & Mfg. Corp.*, 768 F. Supp. 2d 715, 720 (D. Del. 2011) ("The purpose of Rule 9(b) is to provide defendants with

---

[6] Notably, Boston Scientific believes the examiner got it wrong and that the prior art of record rendered all of Nevro's claims unpatentable.  But, had Nevro not withheld the Yearwood References, the Alataris Patent claims would not have issued.

notice of the precise nature of the claim against them, not to test the factual allegations of the claim.").

## B.   Boston Scientific Sufficiently Pled Intent

In this district, "an inequitable conduct claim is rarely disallowed at the pleading stage due to the failure to adequately allege scienter." *Zadro Prod., Inc. v. SDI Techs., Inc.*, No. 17-1406 (WCB), 2019 WL 1100470, at *4-5 (D. Del. Mar. 8, 2019).   Nonetheless, Nevro also challenges the sufficiency of Boston Scientific's pleading as it relates to intent to deceive.   Nevro Br. at 10-14.

The facts here are not complicated and cannot be reasonably disputed at this stage.   James Thacker (a named inventor on the Alataris Patents) collaborated with Dr. Yearwood and was therefore closely familiar with his work, appreciated its significance as it relates to paresthesia-free therapy and then filed serial patent applications targeting that very same work—applications that resulted in the asserted Alataris Patents.   Mr. Thacker withheld that work from the Patent Office.   Boston Scientific alleged that those facts support the reasonable inference that Mr. Thacker withheld the Yearwood References with the specific intent to deceive the PTO.   D.I. 27 at 17-18.   That is all that is required at the pleading stage.   *Exergen*, 575 F.3d at 1327-29; *see Sanders v. The Mosaic Co.*, 418 F. App'x 914, 919 (Fed. Cir. 2011) ("A reasonable inference is one that is plausible and that flows logically from the facts alleged[.]").   Mr. Thacker's direct access to and incorporation of this work into

12

the Alataris Patents, coupled with his subsequent withholding of it from the Patent Office supports a plausible inference of specific intent. *See Illumina Inc. v. BGI Genomics Co.*, No. 20-cv-01465-WHO, 2021 WL 428632, at *4 (N.D. Cal. Feb. 8, 2021) (finding intent to deceive adequately pled where the allegations showed that the prior art at issue was copied by the inventors but withheld during prosecution).

Nevro's argument that Boston Scientific is required at this stage to present direct evidence of Mr. Thacker's or Nevro's intent to deceive is contrary to well-settled law. *See* Nevro Br. at 10-11. Because there is rarely direct evidence supporting the intent element, it is generally "proven by inferences drawn from facts, with the collection of inferences permitting a confident judgment that deceit has occurred." *Schlumberger Tech. Corp. v. Bico Drilling Tools, Inc.*, No. CV H-17-3211, 2018 WL 2059399, at *2 (S.D. Tex. May 3, 2018). Indeed, this district has recognized that "pleadings establishing knowledge of withheld material information" (which is not disputed by Nevro in its motion) can also "lead to an inference of specific intent to deceive the PTO." *Zadro*, 2019 WL 1100470, at *4-5; *see Targus*, 2021 WL 2291978, at *5 (finding intent to deceive adequately pled where the allegations showed that inventors were aware of the undisclosed prior art products due to their positions within the company selling those products).

Nevro also argues that Boston Scientific's pleading is deficient because it did not include deposition testimony from Mr. Thacker in the California Action. Nevro

13

Br. at 12.  This argument makes little sense, and Nevro offers no support for the idea that discovery from the earlier case somehow raises the pleading standards.  Boston Scientific's obligation at the pleading stage is not to present evidence.  *See The Medicines Co. v. Teva Parenteral Medicine*s, *Inc.*, No. CV 09-750-ER, 2011 WL 13135647, at *14 (D. Del. Aug. 26, 2011).  Nevro's contrary argument conflates the "sharp distinction between the requirements for adequately pleading inequitable conduct and for successfully proving it."  *Id.*

Relatedly, Nevro's common refrain that Boston Scientific will go on a "fishing expedition" is unsupportable.  Nevro Br. at 13-14.  Nevro chose to abandon the prior litigation before the court could rule on its summary judgment motion, and then it reasserted those same patents here against newer Boston Scientific SCS products. Not surprisingly, Boston Scientific is repeating some of its defenses to those patents. Like the California Action, the viability of Boston Scientific's defense will be explored and substantiated with discovery and can then be tested by Nevro, as appropriate, through summary judgment.

Finally, Nevro's reliance on *Easton* (again) and *Human Genome Sciences* is inapposite and readily distinguishable.  The specific intent allegation in *Easton* lacked any factual support beyond conclusory statements of "engaged in a pattern of lack of candor" and "repeatedly making factual misrepresentations." *Easton*, 2019 WL 1513463, at * 7.  In *Human Genome Sciences*, the Court dismissed ***without***

14

*prejudice to amend* an inequitable conduct counterclaim where defendants alleged intent based simply on the fact that they "had already paid some seventy million dollars in royalties" on the withheld patents, and therefore, counsel knew of their "existence and significance." *Hum. Genome Scis., Inc. v. Genentech, Inc.*, No. 2:11-cv-6519, 2011 WL 7461786, at *4 (C.D. Cal. Dec. 9, 2011). Here, by contrast, Boston Scientific has provided multiple and specific factual allegations regarding Mr. Thacker's intent to deceive, including that he "received and reviewed" the Yearwood References, he was "present during meetings" where content in the Yearwood References was discussed, he "received drafts" of Yearwood study protocols, and is a "named inventor" on patent claims addressing the same therapy parameters of the Yearwood References. D.I. 27 at 15, 17-18.

## VI.   BOSTON SCIENTIFIC SUFFICIENTLY PLED UNCLEAN HANDS WITH A NEXUS TO NEVRO'S CLAIMS

### A.   Rule 9(b) Does Not Apply; Unclean Hands is Sufficiently Pled

Nevro's motion to strike is predicated on the legally erroneous assumption that an unclean hands defense must be a "fraud-based doctrine" that is "subject to heightened pleading obligations under Rule 9(b)." Nevro Br. at 1, 15. That is not the law.

The defense of unclean hands is not limited to fraud, and relates to far broader categories of behavior. *See AbbVie Inc. v. Boehringer Inhelheim Int'l GmbH*, No. 17-CV-01065-MSG-RL, 2019 WL 917990, at *2 (D. Del. Feb. 25, 2019) ("Wide-

ranging misconduct may invalidate an entire group of related patents" under the doctrine of unclean hands); *Gilead Scis., Inc. v. Merck & Co*., 888 F.3d 1231, 1239 (Fed. Cir. 2018) (recognizing the unclean hands doctrine "necessarily gives wide range to the equity court's use of discretion in refusing to aid the unclean litigant") (quotations omitted). Indeed, the Supreme Court has explained that the doctrine of unclean hands "has always been characterized by flexibility" so "to accord all the relief necessary to correct the particular injustices involved in these situations." *Hazel-Atlas Glass Co. v. Hartford-Empire Co*., 322 U.S. 238, 248 (1944), *overruled on other grounds*, *Standard Oil Co. v. United States*, 429 U.S. 17 (1976). This "flexibility" may explain why Nevro previously pled unclean hands in the Nevro II case with no factual allegations whatsoever. Ex. J at 30 (Nevro's Amended Counterclaims and Defenses).

Boston Scientific has not accused Nevro of fraud. Rather, Boston Scientific alleges unclean hands based on misconduct involving at least bad faith and deceit that is closely tied to the Asserted Patent claims. Nevro's use of Boston Scientific documents and information to develop the Asserted Patents is the sort of bad faith behavior that precludes Nevro's entitlement to any equitable relief with respect to those patents. D.I. 27 at 14; *see, e.g.*, *In Clements Indus., Inc. v. A. Meyers & Sons Corp.*, 712 F. Supp. 317, 328 (S.D.N.Y. 1989) (holding that plaintiff's attempt to extract confidential information from the defendant to obtain the defendant's

confidential trade secrets "fully supports" that plaintiff has "unclean hands"); *see also Edge Sys. LLC v. Cartessa Aesthetics, LLC*, No. 20-CV-6082 (GRB)(ST), 2021 WL 5563751, at *5 (E.D.N.Y. Nov. 29, 2021) (holding that unclean hands was sufficiently pled where the defense "encompass[ed] a pattern of aggressive and deceptive acts").

Similarly, Nevro's use of Boston Scientific's patented lead technology to perform the work recited in the Asserted Patents—and it's publicly-stated intention to continue with that infringement—precludes Nevro's prayers for equitable relief if those same asserted Nevro patents are ever determined to be infringed.  D.I. 27 at 14; *see, e.g.*, *Gilead Scis., Inc. v. Merck & Co, Inc.*, No. 13-CV-04057-BLF, 2016 WL 3143943, at *26-27 (N.D. Cal. June 6, 2016), *aff'd sub nom. Gilead Scis., Inc. v. Merck & Co.*, 888 F.3d 1231 (Fed. Cir. 2018) (recognizing the doctrine of unclean hands applies to "unethical business conduct" and "litigation misconduct" and finding unclean hands where patentee used confidential information about a competitor's product to pursue patent claims covering that same product); *Edge Sys.*, 2021 WL 5563751, at *5.

Contrary to Nevro's argument, Boston Scientific's allegations are not simply that Nevro is an adjudicated willful infringer.  *See* Nevro Br. at 16.  Nevro has unclean hands with respect to its Asserted Patents based on Nevro's past copying and use of Boston Scientific's lead technology, which was part of the work described

17

in Nevro's Asserted Patents, and Nevro's ongoing refusal to stop or to pay for such infringement.  D.I. 27 at 14.  Nevro's contention that *Magnesystems* is "directly on point" fails for this reason.  *See* Nevro Br. at 16-17 (citing *Magnesystems, Inc. v. Nikken, Inc.*, 933 F. Supp. 944, 953 (C.D. Cal. 1996)).  *Magnesystems* is further distinguishable because, unlike here, it did not involve a motion to strike and defendants did not allege that plaintiff was continuing to infringe post-verdict or that plaintiff incorporated the infringing technology to perform the work recited in the asserted patents.  933 F. Supp. at 953-954.  And if Nevro has concerns about a "parade" of the Nevro I infringement verdict to the next jury, that is a matter for another day.  Nevro Br. at 17.

In conclusion, Boston Scientific's allegations are not based on fraud, so Rule 9(b) does not apply.  *See Edge Sys.*, 2021 WL 5563751, at *5 ("Claims of unclean hands, absent allegations of fraud, are pled under the plausibility standard of Fed. R. Civ. P. 8."); *AbbVie Inc. v. Boehringer Ingelheim Int'l GmbH*, No. 17-1065-MSG-RL, 2018 WL 2604825, at *1 (D. Del. June 4, 2018).  And to the extent that Boston Scientific's unclean hands defense also implicates Nevro's inequitable conduct, Boston Scientific's Answer satisfies the heightened Rule 9(b) standard for the reasons set forth above in Section V.

**B.   Boston Scientific Pled A Sufficient Nexus Between Its Unclean Hands Defenses and Nevro's Patent Infringement Claims**

Nevro argues that Boston Scientific's unclean hands defense should be stricken because the wrongdoing identified therein is insufficiently related to this instant action.   Nevro Br. at 15-18.   Across the various proceedings, Boston Scientific has alleged and will prove that Nevro built its business by taking information and technology created by others, including by Boston Scientific.   As Nevro's counsel acknowledged to Magistrate Judge Burke in a previous discovery dispute—"actually receiving" the opposing party's confidential information is "the closest nexus you could have" for an unclean hands defense.   Ex K at 55:19-22 (Discovery Dispute Oral Argument).

While Nevro tries to argue that its Asserted Patents "have nothing to do" with that misconduct, Nevro's disagreement with Boston Scientific's case theory does not render the pleading deficient.   *See* Nevro Br. at 17.   There is ample evidence in the record of the related proceedings that at least two named inventors on patents asserted here (Thacker and Park) took Boston Scientific documents with them to Nevro.   Messrs. Thacker and Park not only took confidential information relating to Boston Scientific's SCS systems to Nevro, but also used that information for Nevro's own SCS systems, which are described and claimed in the Asserted Patents in this case.   *See, e.g.*, Ex. G at ¶¶ 29-32, 197-237.   That technology is the subject matter of the Asserted Patents and forms a predicate for Nevro's claims and prayer

19

for equitable relief here.  D.I. 1 at 8, 37.  The court has permitted unclean hands

defenses in similar circumstances.  *See, e.g.*, *Jazz Pharms., Inc. v. Roxane Lab'ys,*

*Inc.*, No. 2:10-CV-06108-ES-JAD, 2013 WL 6858765, at *6 (D. N.J. Dec. 30, 2013)

(finding an amended answer sufficiently pled where unclean hands allegations

concerned wrongful use of confidential information acquired during litigation); *Sun*

*Microsystems, Inc. v. Versata Enterprises, Inc.*, 630 F. Supp. 2d 395, 410 (D. Del.

2009) (denying motion to strike where plaintiff "may be guilty of conduct involving

at least bad faith, directly related to its patent infringement claims").

Nevro's theft of Boston Scientific's lead technology also bears a sufficient

nexus here.  Nevro used its infringing leads to perform the work recited in the

Asserted Patents.  Moreover, Nevro is not acting equitably and is irreparably

harming Boston Scientific by continuing to sell infringing SCS leads in reckless

disregard of Boston Scientific's adjudicated patent rights.  D.I. 27 at 14.  Indeed,

each time Nevro practices the asserted claims in this case, it is another act of

infringement of Boston Scientific's lead patent.  These issues and patented

technologies are closely interconnected as it is impossible to deliver any type of SCS

therapy without stimulation leads.  And the purported injury (irreparable harm) that

Nevro seeks to prevent with the requested equitable relief (injunction) in this case is

the same injury that Boston Scientific is seeking to prevent with its request for

equitable relief following last year's jury verdict in the Nevro I case.  Ex. L at 1-2
(Boston Scientific's Motion for Equitable Relief).

Without further discovery, it remains unclear how far Nevro's misconduct
goes, but there is a sufficient factual basis for Boston Scientific to assert that Nevro
comes to this litigation with unclean hands and has engaged in misconduct that is
directly tied to the development, acquisition, and enforcement of its Asserted
Patents.  *Jazz Pharms.*, 2013 WL 6858765, at *6; *Gilead Scis*, 2016 WL 3143943,
at *26-27; *Sun Microsystems*, 630 F. Supp. 2d at 410.  Boston Scientific should not
be denied the opportunity to pursue its unclean hands allegations at this stage.  *See
Micron Tech., Inc. v. Rambus Inc.*, No. CV 00-792 (SLR), 2007 WL 9771143, at *4
(D. Del. Aug. 29, 2007) (holding that the viability of an unclean hands defense can
be tested through summary judgment).

## VII.   BOSTON SCIENTIFIC SHOULD BE PERMITTED TO AMEND, IF NECESSARY

Should the Court determine that any aspect of Boston Scientific's Answer
requires additional factual support, Boston Scientific respectfully requests leave to
amend to cure any deficiencies this Court identifies.  This case is in its early days.
No deadlines, let alone a trial date, have been set.  Yet, even at this early stage, in
light of the parties' prior litigations, Nevro knows full well what Boston Scientific
is contending with respect to its defenses.  Even if Nevro did not know, Nevro has
not suffered any prejudice.

## VIII. CONCLUSION

For the foregoing reasons, Boston Scientific respectfully requests that the Court deny Nevro's Motion to Strike, and to the extent necessary, grant Boston Scientific leave to amend its Answer to cure any deficiencies identified by the Court.

DATED:  February 22, 2022

Michael P. Kahn
Caitlin Olwell
Brooks Kenyon
**AKIN GUMP STRAUSS HAUER & FELD LLP**
One Bryant Park, Bank of America Tower
New York, NY 10036-6745
(212) 872-1000
mkahn@akingump.com
colwell@akingump.com
bkenyon@akingump.com

Steven D. Maslowski
**AKIN GUMP STRAUSS HAUER & FELD LLP**
1735 Market Street, 12th Floor
Philadelphia, PA 19103-7501
(215) 965-1200
smaslowski@akingump.com

Rachel J. Elsby
**AKIN GUMP STRAUSS HAUER & FELD LLP**
Robert S. Strauss Tower
2001 K Street, N.W.
Washington, DC 20006-1037
(202) 887-4000
relsby@akingump.com

Respectfully submitted,

**Farnan LLP**

/s/ Michael J. Farnan
Brian Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 N. Market Street
12th Floor
Wilmington, Delaware 19801
(302) 777-0300
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

*Attorneys for Defendants Boston Scientific Corporation and Boston Scientific Neuromodulation Corp.*

23

## <u>CERTIFICATION OF COMPLIANCE</u>

The foregoing document complies with the type-volume limitation of this Court's March 2, 2020 form Scheduling Order for All Cases.  The text of this brief, including footnotes, was prepared in Times New Roman, 14 point.  According to the word processing system used to prepare it, the brief contains 4,931 words, excluding the case caption, signature block, table of contents and table of authorities.

 /s/ Michael J. Farnan
Michael J. Farnan (Bar No. 5165)

Dated: February 22, 2022